UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRED HERMAN KOBIE, III,

        Plaintiff,

vs.                        Case No.  2:12-cv-98-FtM-29DNF

JASON FITHIAN, Detective of Lee
County, Sheriff Department, MIKE
SCOTT, Sheriff of Lee County Sheriff
Department,

        Defendants.
_____

**OPINION AND ORDER**

    This matter comes before the Court on Defendants' Motion to Dismiss Counts III and IV of Plaintiff's Second Amended Complaint (Doc. #67) filed on June 3, 2013.  Plaintiff filed a Response to Defendants' Motion to Dismiss (Doc. #71) on June 14, 2013.  Also before the Court is Defendants' Motion for Summary Judgment (Doc. #77) filed on August 2, 2013.  Plaintiff filed a Response to Defendants' Motion for Summary Judgment (Doc. #82) on August 16, 2013, and defendants filed a Reply (Doc. #89) on September 16, 2013.  Defendants also filed a Motion to Strike (Doc. #87) on September 6, 2013, to which plaintiff filed a Verified Response to the Motion to Strike (Doc. #90) on September 17, 2013.

### I. Defendants' Motion to Dismiss

Plaintiff's Second Amended Complaint sets forth four counts pursuant to 42 U.S.C. § 1983 for violation of plaintiff's constitutional rights, two counts against Detective Jason Fithian (Detective Fithian) (Counts I and III) and two counts against Sheriff Mike Scott (Sheriff Scott) (Counts II and IV). Defendants contend that Counts III and IV should be dismissed because they are simply duplicative of Counts I and II.

With the aid of the Joint Pre-Trial Statement (Doc. #103), it seems clear that Counts I and II allege constitutional claims of false arrest and Counts III and IV allege constitutional claims of false imprisonment, all arising from plaintiff's October 29, 2010 arrest. (Doc. #103, p. 2, § IIa.) Count I alleges that Detective Fithian arrested plaintiff pursuant to an arrest warrant but without probable cause (and hence in violation of the Fourth Amendment). Count III alleges that Detective Fithian caused the continued detention of plaintiff without probable cause by failing to disclose certain information to the State Attorney's Office (and hence in violation of the Fourteenth Amendment). Counts II and IV make corresponding similar allegations against Sheriff Scott.

In order to prevail on a claim for false arrest under § 1983, a plaintiff must establish that an arrest was made without probable cause. Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003) (citing Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir.

1998)).  "Likewise, falsifying facts to establish probable cause is patently unconstitutional." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004).  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997)).

In order to prevail a claim for false imprisonment under § 1983, a plaintiff must establish the common law elements of false imprisonment and a due process violation under the Fourteenth Amendment. Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009).  The elements of common law false imprisonment are (1) an intent to confine, (2) an act resulting in confinement, and (3) the victim's awareness of confinement. Id.  The Fourteenth Amendment Due Process Clause includes the right to be free from continued detention after the state should have known that the detainee was entitled to release. West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007).  To establish such a violation, a plaintiff must show that the defendant acted with deliberate indifference to the plaintiff's due process rights. Id.

Here, plaintiff could prevail on Count III or IV even if it is ultimately determined that the arrest was supported by probable

cause (or arguable probable cause).  Therefore, Counts III and IV may not be dismissed as duplicative, and defendants' motion to dismiss is denied.

## II.  Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to qualified immunity because the facts establish that there was probable cause or arguable probable cause for plaintiff's arrest and continued imprisonment.  Plaintiff argues that there are at least disputed material facts which preclude summary judgment.

## A.  Standard of Review

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine'' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256,

1259-60 (11th Cir. 2004).  To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material

fact, then the court should not grant summary judgment." <u>Allen v.
Bd. of Pub. Educ.</u>, 495 F.3d 1306, 1315 (11th Cir. 2007).

## B.  **Qualified Immunity Principles**

"Qualified immunity protects government actors performing
discretionary functions from being sued in their individual
capacities." <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1077 (11th Cir.
2003).  It offers complete protection so long as the government
actor's "conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The
doctrine of qualified immunity "balances two important interest-the
need to hold public officials accountable when they exercise power
irresponsibly and the need to shield officials from harassment,
distraction, and liability when they perform their duties
reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).  The
Eleventh Circuit has often said that qualified immunity protects
"all but the plainly incompetent or one who is knowingly violating
federal law." <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 733 (11th
Cir. 2010) (citing <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir.
2002)).

In order to receive the protection of qualified immunity, the
government actor must first demonstrate that he was performing a
discretionary function.  <u>McClish v. Nugent</u>, 483 F.3d 1231, 1237
(11th Cir. 2007).  The burden then shifts to the plaintiff to prove

that qualified immunity does not insulate the official from liability. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). Here, plaintiff does not dispute that defendants were performing discretionary functions at the time of the alleged injury; therefore, plaintiff shoulders the burden of proving that qualified immunity does not apply.

In determining whether an officer is entitled to qualified immunity, the Court employs a two-party inquiry, asking: (1) whether the facts, taken in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated the plaintiff's constitutional rights; and (2) whether the right violated was clearly established. Pearson, 555 U.S. at 232. A court may exercise its discretion in deciding the order in which the two prongs should be addressed. Id. at 236.

The second prong of the qualified immunity standard is easily satisfied in this case. Plaintiff's right to be free from an arrest and detention based upon an arrest warrant for which the affidavit did not contain probable cause was clearly established, and no reasonable officer would have thought otherwise. In 1995, the Eleventh Circuit stated: "Malley[1] and Garmon[2] clearly establish that a police officer is not protected by qualified immunity if he

---

[1]Malley v. Briggs, 475 U.S. 335, 345 (1986).

[2]Garmon v. Lumpkin County, Ga., 878 F.2d 1406, 1410 (11th Cir. 1989).

applies for an arrest warrant where 'a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" Pickens v. Hollowell, 59 F.3d 1203, 1207 (11th Cir. 1995).  In 1999, the Eleventh Circuit stated:

> Furthermore, the law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen and, thus, that qualified immunity will not shield Detective Powers from liability for such false statements, if such false statements were necessary to the probable cause. Malley v. Briggs, 475 U.S. 335, 344-45 (1986); Whiting v. Traylor, 85 F.3d 581, 585 n.5 (11th Cir. 1996); Kelly v. Curtis, 21 F.3d 1544 (11th Cir. 1994) (following Malley and holding police officer not entitled to qualified immunity in § 1983 claim based on officer's false statements in 1989 affidavit submitted to magistrate judge for arrest warrant at warrant hearing); United States v. Martin, 615 F.2d 318, 327-29 (5th Cir. 1980) (applying rule regarding false statements in a search warrant in Franks v. Delaware, 438 U.S. 154, 156, 165-71 (1978), to perjurious statements used to obtain an arrest warrant).

Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999).  Defendants do not dispute these well-settled principles, but argue that probable cause and/or arguable probable cause did in fact exist in this case.

Detective Fithian submitted a probable cause affidavit which resulted in the issuance of an arrest warrant by a state judge. The face of the probable cause affidavit clearly sets forth probable cause to support plaintiff's arrest.  That does not necessarily end the matter, however, because plaintiff challenges

the truthfulness of much of the factual information set forth in the affidavit.  This brings the Court to defendant's motion to strike the affidavit of Mark Lee (Lee), the confidential informant being used by Detective Fithian at the time of the arrest.  The Court must resolve the motion to strike in order to determine what information may be considered at the summary judgment stage.

## C.  Defendants' Motion to Strike the Affidavit of Mark Lee

Mark Lee was the confidential informant who allegedly provided Detective Fithian with information used in the probable cause affidavit to secure plaintiff's arrest.  In the state criminal prosecution, Lee gave a deposition admitting that he provided Detective Fithian with the information used in the probable cause affidavit and the truthfulness of that information.  Lee has now given an affidavit to plaintiff's counsel recanting his prior deposition testimony and denying knowing of or giving information about Kobie to Detective Fithian.  Defendants assert that Lee's recanting affidavit should be stricken for three reasons.  First, defendants contend that the affidavit should be stricken pursuant to Rule 37(c)(1) because plaintiff failed to comply with Rule 26(e).  Second, defendants contend that the affidavit is a sham affidavit.  Finally, defendants assert that the affidavit does not comply with Rule 56.

**(1)   Rule 37 Sanction**

Defendants claim that Lee's affidavit should be stricken in its entirety because plaintiff was aware of Lee's contact information and intent to recant his prior testimony nine months before the close of discovery, but failed to disclose such information.   Defendants contend that this non-disclosure is prejudicial because there was no reason to believe that Lee would recant his prior sworn testimony, and by cancelling Lee's deposition plaintiff foreclosed defendants' opportunity to depose Lee.

Each party is required to provide "the name, and if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information . . . ." Fed. R. Civ. P. 26(a)(1)(A).  The parties are required to supplement incomplete Rule 26(a) disclosures.  Fed. R. Civ. P. 26(e)(1).  A party that fails to comply with Rule 26(a) or (e) is precluded from using that witness "to supply evidence on a motion . . . unless that failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The decision to exclude such evidence is discretionary.  Lawver v. Hillcrest Hospice, Inc., 300 F. App'x 768, 770 (11th Cir. 2008) (citing Cooper v. Southern Co., 390 F.3d 695, 727-28 (11th Cir. 2004)).

Plaintiff's Rule 26 disclosures were submitted on November 30, 2012, and identified Lee as a witness who could testify as to his

knowledge and conversations with defendants, but no contact information was provided. (Doc. #32, p. 2.) On December 22, 2012, plaintiff's counsel interviewed Lee in Orlando, Florida. The interview revealed that Lee intended to recant significant portions of the sworn testimony given during the criminal proceedings against Kobie. (Doc. #82, pp. 55-60.) Plaintiff's counsel acknowledges that a phone number for Lee was disclosed during the interview, but states that it was incorrect and a correct number was not obtained until August 9, 2013. (Doc. #90, p. 8.)

On August 13, 2013, plaintiff notified defendants of his intent to depose Lee on August 26, 2013. (Doc. #81.) On August 16, 2013, plaintiff filed a response in opposition to defendants' motion for summary judgment stating that Lee agreed to provide an affidavit recanting his prior testimony and that the affidavit would be filed near the end of discovery. (Doc. #82, p. 55.) On the date of the scheduled deposition, plaintiff notified defendants that Lee's deposition was being cancelled. Defendants' counsel responded to the cancellation by asking if Lee had been located, but received no response. (Doc. #87, Exh. A.) Lee's affidavit was signed on August 28, 2013, and was filed on September 3, 2013, two days _after_ the close of discovery. (Doc. #86.)

When deciding whether to exclude a witness under Rule 37(c)(1), courts consider (1) the importance of the testimony; (2) the reason for non-disclosure; and (3) prejudice. _Bearint ex rel._

<u>Bearint v. Dorell Juvenile Grp.</u>, 389 F.3d 1339, 1353 (11th Cir. 2004).  Here, it is clear that Lee's affidavit is important at this stage of the proceedings.  Plaintiff's opposition to summary judgment relies heavily on the information supplied by Lee in the affidavit, and plaintiff states in his response to the motion to strike that exclusion of the affidavit would be tantamount to dismissal of the case.  The Court agrees that without consideration of the Lee recanting affidavit, plaintiff's chances of surviving summary judgment are slim.

Plaintiff's reason for non-disclosure is troubling, and demonstrates a fast and loose approach to compliance with the federal rules.  Plaintiff's counsel had Lee's correct phone number on August 9, 2013, but did not update his discovery response.  Plaintiff's counsel claims to still not have Lee's address, but does not explain how the initial interview was scheduled.  Plaintiff's counsel advised the Court of Lee's intent to recant testimony, scheduled Lee's deposition, cancelled Lee's deposition, and obtained a recanting affidavit during the discovery period, but filed the recanting affidavit after the close of discovery.  Additionally, plaintiff's counsel failed to provide contact information in response to defense counsel's inquiry on August 26, 2013.  Although the Court finds plaintiff's reasons for non-disclosure of Lee's contact information troubling, striking the affidavit is too severe a sanction.

Finally, the Court finds the failure to supplement the initial disclosures to be prejudicial.  By failing to provide timely supplemental information, plaintiff effectively eliminated defendants' ability to depose Lee before the close of discovery. However, the prejudice to defendants is outweighed by undue prejudice to plaintiff if the recanting affidavit is excluded. This is not a case where the plaintiff failed to disclose the identity of a key witness or the anticipated nature of his testimony.  The recanting affidavit is not admissible at trial without Lee's presence, but the Court will not strike it as a sanction at the summary judgment stage.

**(2)  Sham Affidavit**

The second contention set forth in the motion to strike is that Lee's affidavit is inadmissible because it is a sham affidavit.  "A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) (citing Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)).  However, "[t]his rule is applied 'sparingly because of the harsh effect [it] may have on a party's case.'" Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987)).  As such,

-13-

a court must find some inherent inconsistency between an affidavit and deposition before disregarding the affidavit.  Id.

There is no question that Lee's recanting affidavit contradicts most of his prior testimony.  The contradictions, however, are not without some explanation.  Lee states that his subsequent experience in the military made him want to "right the wrongs" that were done in this case and that he was untruthful in the criminal matter because of threats made by Fithian.  (Doc. #86.)  Although developing a conscious and getting over prior threats may not ultimately be enough for a trier of fact to find any of Lee's testimony credible, the explanation is sufficient to survive defendants' motion to strike.

**(3)  Compliance with Rule 56**

The final argument raised in defendants' motion to strike is that the affidavit does not comply with Rule 56 because Lee does not declare that the information provided was based on personal knowledge or that he was competent to testify.  Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify."  Fed. R. Civ. P. 56(c)(4).  Here, the Court finds that the information in the affidavit is based on personal knowledge because the statements pertain to Lee's actions and observations in the criminal investigation.  As to Lee's

-14-

competency, defendants have not presented any evidence to suggest that Lee lacks the competency to testify. Accordingly, defendants' motion to strike is denied.

**D. Qualified Immunity**

To receive qualified immunity, an officer need not have actual probable cause, but only arguable probable cause. <u>Brown</u>, 608 F.3d at 734 (citing <u>Holmes</u>, 321 F.3d at 1079). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." <u>Kingsland</u>, 382 F.3d at 1232. This standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs. <u>Rushing v. Parker</u>, 599 F.3d 1263, 1266 (11th Cir. 2010).

Detective Fithian's investigation of Kobie began with and relied heavily on the information provided by a confidential informant, Mark Lee. An officer is entitled to rely on the statements of a confidential informant and corroborating evidence to establish probable cause. <u>Case v. Eslinger</u>, 555 F.3d 1317, 1327 (11th Cir. 2009) (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 242 (1983)). In determining whether the information provided by a confidential informant rises to the level of probable cause, a court must assess the totality of the circumstances. <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir. 1996). Courts "consider the relevance of factors such as the informant's 'veracity,'

'reliability,' and 'basis of knowledge.' <u>Id.</u> (citations omitted). Furthermore, the corroboration of details through independent police work adds significant value to the probable cause determination. <u>Id.</u>

The probable cause determination relied primarily on the information provided by Lee and the purported admissions of Kobie and Jones, but there are material issues of disputed facts and little in the record to independently support the veracity of this evidence. Lee claims that he was forced to help Fithian arrest Kobie even though he had no knowledge of Kobie doing anything illegal, and further claims that neither Jones nor Kobie admitted to any involvement in criminal activity during the investigation. The recent change in Lee's position and the credibility of his statements cannot be resolved on summary judgment. The Eleventh Circuit has held that it is not proper to grant summary judgment on the basis of credibility choices, even if the Court believes that the evidence presented by one side is of doubtful veracity. <u>Feliciano v. City of Miami Beach</u>, 707 F.3d 1244, 1252 (11th Cir. 2013) (citing <u>Miller v. Harget</u>, 458 F.3d 1251, 1256 (11th Cir. 2006). "This is because credibility determinations and the weighing of evidence 'are jury functions, not those of a judge.'" <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).

Defendants further assert that Jones acknowledged his admissions to the thefts during his deposition on February 13, 2013, and that this alone is sufficient to establish probable cause.  The deposition testimony is as follows:

> Q.  At some point, did you think that Mark was wearing a wire to record your conversations?
>
> A.  Yeah, in the beginning we were joking with him about it.
>
> Q.  Why would you joke about it if you felt he was wearing a wire to record a conversation that would implicate you in the theft of stolen trucks?
>
> A.  Because I didn't do it.  I didn't have no worries about getting in trouble for it.
>
> Q.  What kind of joke did you make?
>
> A.  I don't know.  It has been so long ago.  He would always bring up things that would insinuate that we did something.  I would always joke around, yeah, okay, we did that, whatever.  I don't remember how it went.  I would always go along with what he was saying.
>
> Q.  You were just being sarcastic when you went along with what he was saying?
>
> A.  Yeah.
>
> Q.  So, if he made a statement that you were involved in the theft of trucks, would you agree, but it was just kidding.
>
> A.  Yeah.

(Doc. #77, pp. 5-6 (citing Jones Dep. 15:5-16:1, Feb. 13, 2013).) Jones acknowledges that _if_ Lee made a statement implicating him in the thefts, he would have agreed with it.  Defendants submitted the audio recordings from the controlled contacts; however, most of the

recordings are inaudible and it is difficult to discern who is speaking. For example, the recording from October 14, 2010, clearly contains discussion regarding the thefts, but the Court is unable to discern if any of the statements constitute an admission by Jones. (Doc. #84, Exh. #3, Disc 10/14/10, 22:20-24:00.) Furthermore, an admission by Jones does not necessarily implicate Kobie in the thefts or establish arguable probable cause as to Kobie, and Lee claims no such admissions were made. Accordingly, the purported admissions by Jones and Kobie do not establish probable cause or arguable probable cause as to Kobie.

The probable cause statement also refers to the truck parts found at a location identified by Lee on Huffmaster Road. Absent incriminating statements, there is little to connect the parts to Jones or Kobie in light of Lee's involvement in the thefts. Lee also states that parts on Huffmaster Road have no connection to Kobie. Given the significance of the material disputed issues of fact, qualified immunity is not appropriate at this stage of the proceedings. Therefore, defendants' motion for summary judgement is denied.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss Counts III and IV of Plaintiff's Second Amended Complaint (Doc. #67) is **DENIED.**

2. Defendants' Motion to Strike (Doc. #87) is **DENIED.**

3.   Defendants' Motion for Summary Judgment (Doc. #77) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   11th   day of December, 2013.

_____

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record